IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                               No. 1:19-cr-0754-KWR

JOSHUA CORDOVA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Compel the Government to Produce Rule 16 and *Brady-Giglio* Discovery, filed April 9, 2020 **(Doc. 41)**. This motion was fully briefed on August 12, 2020 and is ready for decision.

Defendant sought fourteen separate items of discovery in his motion pursuant to Fed. R. Crim. P. 16, *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. U.S.*, 405 U.S. 150, 153 (1972). **Doc. 41.** The Government responded and provided some requested discovery, but items 2, 3, 4, 6, 9, and 12 appear to still be at issue. *See* **Doc. 56 at 2-4** (listing outstanding discovery requests). Having reviewed the parties' briefs and the applicable law, the Court grants in part and denies in part Defendant's motion as described below.

### BACKGROUND

Defendant worked at Sandia National Labs and is alleged to have fraudulently purchased personal items on his work-provided credit card, claiming the purchases were for authorized work projects. A grand jury returned a 63-count superseding indictment asserting 15 counts of mail fraud in violation of 18 U.S.C. § 1341 and approximately 48 counts of theft and conversion of Federal funds in violation of 18 U.S.C. § 641. **Doc. 28.**

Defendant worked as an operational trainer and was given a procurement card to make purchases for authorized work-related projects. Each purchase was itemized and entered into Sandia's electronic procurement database, where it was associated with a specific governmental customer and project, and tracked for auditing purpose. Defendant and his team made purchases for the projects. The majority of the 1,500 purchases were for authorized work-related projects.

Defendant admits that he purchased some personal items using Sandia money. However, he alleges that some of the alleged fraudulent purchases were for authorized work-approved purposes. He seeks discovery to show that some of the items were in fact for work-approved purposes.

Defendant alleges that his administrative assistant mislabeled some purchases. He alleges he is being charged for some purchases simply because the entry was mislabeled, although the purchase was in fact for authorized work projects.

Defendant filed a motion to compel, requesting 14 separate items of discovery. The Government responded and provided some discovery. In his reply, Defendant asserts that the following requested discovery remains pending:

Item 2: any documents, memorandums, email correspondence, or letters of explanation discussing disciplinary or corrective actions taken against any of Mr. Cordova's supervisors, including but not limited to Jamieson "Jake" Deuel, Robin Thompson, and Patricia Herbert, in relation to Mr. Cordova's alleged misconduct, which is the subject matter of this case.

Item 3: Documents identifying Jake Deuel's, Robin Thompson's, and Patricia Herbert's job titles and job descriptions, including any changes or modifications made from August 1, 2014, through the present.

Item 4: Any reports, documents, memorandums, or email correspondence related to the work scope, oversight responsibilities, and identities of Sandia's "Procurement card Self-assessment Team" from August 1, 2014 through October 2018.

Item 6 (partially produced): All proposals and work scope authorizations made by Sandia's customers related to the projects and tasks to which Mr. Cordova was assigned from August 1, 2014, through October 2018 as identified in **Exhibit 3**.

Item 9 (partially produced): All policies or guidelines reflecting Mr. Cordova's Sandia's procurement or purchase card exceptions and allow-abilities from August 1, 2014, through October 2018.

Item 12: All documents, memorandums, email correspondence, or letters of explanation discussing the changes or amendments or proposed changes or amendments to policies related to the issuance, authorization, and use of Sandia's procurement or purchase cards from August 1, 2014, through the present.

**Doc. 56.** The motion was fully briefed on August 12, 2020 and is ready for decision.

## DISCUSSION

**I.    Relevant Law.**

The *Brady* rule, Rule 16, and the Jencks govern the discovery to which the defendant is entitled. *United States v. Griebel*, 312 Fed. Appx. 93, 95-96 (10th Cir. 2008) (noting the "[G]overnment's discovery obligations [ ] are defined by Rule 16, *Brady, Giglio* and the Jencks Act" and stating the defendant's request to expand his discovery rights beyond those three sources was unsupported by the law).

**A.    Rule 16**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides:

> (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item it its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). Although Rule 16's language is permissive, it does not authorize "a blanket request to see the prosecution's file," and a defendant may not use the rule to engage in a "fishing expedition." *United States v. Maranzino*, 860 F.2d 981, 985-86 (10th Cir. 1988) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)). A defendant must make a *prima facie* showing of materiality before he is entitled to obtain requested discovery. *See United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* Rule 16 also does not obligate the United States to "take action to discover information which it does not possess." *United States v. Badonie*, 2005 WL 2312480, at *2 (D.N.M. Aug. 29, 2005) (quoting *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991)) (internal quotation marks omitted).

Evidence is "material" under Rule 16 if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, ... or assisting impeachment or rebuttal." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (internal quotation marks omitted) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)) (internal quotation marks omitted). "Although the materiality standard is not a heavy burden, the Government need disclose rule 16 material only if it enables the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham*, 83 F.3d at 1474 (alterations, citations, and internal quotation marks omitted).

**B.**     ***Brady***

The *Brady* doctrine was established by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963):

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

The United States Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995), described the responsibility of the government in dealing with *Brady*:

> But the prosecution, which alone can know what is undisclosed, must be assigned the responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable provability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecution succeeds or fails in meeting this obligation, the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of important is inescapable.

*Id.* at 437-38. *Brady* also extends to evidence affecting witness credibility. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

The government is not required to produce evidence simply because it might be exculpatory. *United States v. Agurs*, 427 U.S. 97, 110, n. 16 (1976) ("It is not to say that the State has an obligation to communicate preliminary, challenged, or speculative information."); *United States v. Fleming*, F.3d 1325, 1331 (10th Cir. 1994) (noting "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard."). Moreover, the Court does not have a duty to directly supervise the government's disclosure of *Brady* information, as such supervision would necessitate a complete review of all material gathered during the government's investigation. *See United States v. McVeigh*, 923 F. Supp. 1310, 1313 (D. Colo. 1996). Rather, the duty to determine what disclosure is required under *Brady* rests with the prosecution. *See Bank v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *McVeigh*, 923 F. Supp. at 1313. The Court should rely on the government's representations of its compliance with *Brady* unless the defendant shows

cause to question them and the materiality of the evidence sought. *See McVeigh*, 923 F. Supp. at 1314; *see also Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("[o]rdinarily, we presume that public officials have properly discharged their official duties."). *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (noting that where a defendant only makes a general request for exculpatory material under *Brady*, the government decides which information must be disclosed).

**II.     Items 2, 3, 4: Discovery related to Defendant's Supervisors and the Procurement Card Team.**

Under Item 2, Defendant seeks "any documents, memorandums, email correspondence, or letters of explanation discussing disciplinary or corrective actions taken against any of Mr. Cordova's supervisors, including but not limited to Jamieson "Jake" Deuel, Robin Thompson, and Patricia Herbert, in relation to Mr. Cordova's alleged misconduct, which is the subject matter of this case."  The Government represents that it will produce impeachment evidence of witness' disciplinary or corrective action taken in relation to their failure to properly supervise Defendant. **Doc. 42.**  However, the Government asserts that it does not yet know who will serve as witnesses at trial.

Nevertheless, the Court finds Item 2 is material under Rule 16 nbecause it may show that a purchase was legitimate but merely not reported correctly.  Defendant suggests that his failure to adequately track and account for some expenses were the result of a high workload and others inputting data incorrectly.  Defendant allegedly reported to his supervisors that he was not able to adequately report his expenses.  He alleges his supervisors and the procurement team failed to support him and assist him in his expense reporting obligations.  Reprimands for failure to adequately support Defendant in accurately reporting his expense may be material under Rule 16.  Therefore, Defendant's request under Item 2 is granted.

Under Item 3, Defendant requests "Documents identifying Jake Deuel's, Robin Thompson's, and Patricia Herbert's job titles and job descriptions, including any changes or modifications made from August 1, 2014, through the present." This request is overbroad and would produce irrelevant or immaterial information. Moreover, any relevant, material or exculpatory information would likely already be produced under Item 2. It is unclear how Item 3 would aid Defendant in uncovering admissible evidence or assist impeachment or rebuttal. Therefore, Defendant's request under Item 3 is denied.

Under Item 4, Defendant seeks "Any reports, documents, memorandums, or email correspondence related to the work scope, oversight responsibilities, and identities of Sandia's "Procurement card Self-assessment Team" from August 1, 2014 through October 2018." The Court finds that Item 4 is overbroad and would produce immaterial discovery. Defendant requests all emails and correspondence relating to the work scope and authorization of the procurement card team. The principles that govern discovery in criminal cases do not authorize a defendant to conduct a "fishing expedition," *i.e.*, a broad, generalized search for information in the hopes that the defendant might uncover something helpful to his case. *See United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (noting the Constitution "does not grant criminal defendants the right to embark on a broad or blind fishing expedition among documents possessed by the Government") (citation and internal quotation marks omitted). This is extremely broad and could include a great deal of irrelevant and sensitive information.

There is no requirement that "the prosecution make a complete accounting to the defense of all evidence in its possession," *United States v. Baxter*, 492 F.2d 150, 173 (9th Cir. 1973), and *Brady* does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant, *Smith v. Secretary of New Mexico Department of Corrections*,

50 F.3d 801, 823-24 (10th Cir. 1995). Moreover, the accused has no right to rummage through the government's files, *United States v. Williams*, 580 F.2d 578, 585 (D.C. Cir. 1978), which is essentially what Defendant is asking to do here. *Brady* does demand an "open file" policy. *See Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).

Moreover, it is unclear how such a broad request under Item 4 would help Defendant uncover documents relevant to his claim that he failed to adequately document some expenses. As the Government explains, negligence of the victim is not a defense to the crime charged. **Doc. 42 at 13.** It is undisputed that the employees were broadly trusted to use credit cards for authorized purposes with little oversight. It is unclear how this material would show that his purchases were legitimate but merely mislabeled, given the other items of discovery Defendant has already received. Some of the requested discovery under Item 4 will likely already be produced under Item 9, as explained below. Therefore, Defendant's request under Item 4 is denied.

The denial of his broad request under Item 4 does not prevent him from showing that certain purchases were in fact legitimate but merely mislabeled. Moreover, the Government remains obligated to produce discovery on any corrective action or discipline for any witness.

**III.   Item 6.**

As to Item 6, Defendant requested "[a]ll proposals and work scope authorizations made by Sandia's customers related to the projects and tasks to which Mr. Cordova was assigned from August 1, 2014, through October 2018 as identified in **Exhibit 3**." The Government argues that this request is overbroad. In a reply brief, Defendant narrowed his request to the 29 projects in which he contests that the purchases were fraudulent. The Court agrees with Defendant that this narrowed request is material because it could assist him in showing that some purchases were legitimately related to a project or client request. The Court agrees with Defendant that in order

to prove that the disputed purchases related to 29 projects were legitimate, he needs the work proposals or authorizations. The Court will grant his narrowed request in his reply brief. **Doc. 56 at 6.**

## IV. Item 9.

As to Item 9, Defendant requested production of "all policies or guidelines reflecting Mr. Cordova's Sandia's procurement or purchase card exceptions and allow-abilities from August 1, 2014 through October 2018." The Government responded by producing the guidelines and policies. Additionally, the Government produced documents regarding specific exceptions granted to Defendant as well as the denial of his request in one instance.

In a reply brief, Defendant requested disclosure of Defendant's procurement or purchase card exceptions and allow-abilities for the time frame requested. He argues that discovery related to his purchasing authority – which was broad – is necessary to show that certain purchases were lawful and not outside his purchasing ability.

The Government responded by producing a PDF document that includes Defendant's requests and his supervisors' approvals for procurement card exceptions for "attractive property" and certain spending limits to complete customer projects. However, the document is incomplete. It includes one instance where the reason for rejecting an exemption was cut off. **Doc. 58-3 at 2.** Moreover, it references previous instances in which Defendant was granted purchase exceptions but does not provide the exception itself.

Defendant requests that the Government produce a complete copy of his exemptions, including (1) Ms. Herbert's full response (**Doc. 58-3 at 2);** (2) associated documents indicating his previously approved exemption in 2016 (**Doc. 58-3 at 4);** (3) his prior email approval (Doc. 58-3 at 8); (4) all additional exceptions and allow-abilities from August 1, 2014 through October 2018.

The Court finds that these requests are material and could lead to discovery showing that certain purchases were not outside his purchasing ability. Moreover, it appears that the Government does not object. Therefore, Defendant's request in his reply brief under Item 9 is granted. **Doc. 56 at 8-9.**

## V.     Item 12

As to Item 12, Defendant requested "All documents, memorandums, email correspondence, or letters of explanation discussing the changes or amendments or proposed changes or amendments to policies related to the issuance, authorization, and use of Sandia's procurement or purchase cards from August 1, 2014, through the present." In response, the Government produced SNL's Procurement card policy.

Defendant acknowledges that certain purchases were shipped to his house but asserts that was allowed under SNL's procurement card policy. Defendant argues that the Government is labeling certain purchases as illegal in part because they were shipped to his home, when that was allowed under Sandia policy. Defendant argues that Item 12 is material to his defense and exculpatory "since the government intends to rely on evidence he shipped some items to his home address or other locations as evidence of guilt." **Doc. 56 at 10.**

However, as the Government argues, it is unclear how internal documents, memoranda, and correspondence regarding those policies are material to his case. Defendant apparently has what he wants – a policy stating that shipping purchases to his home was authorized.

Therefore, the Court will deny Defendant's request under Item 12.

## CONCLUSION

The Government responded to Defendant's Motion to Compel (**Doc. 41**) and provided much of Defendant's requested discovery. The Court grants in part and denies in part Defendant's

remaining requests for discovery in his reply brief. Defendant's request in his reply for discovery under items 2, 6, and 9 is granted. His request for discovery under items 3, 4, and 12 is denied.

**IT IS SO ORDERED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE